## J. T. LOCKHART, APPELLANT, v. THOMAS MACKIE, RESPONDENT.

Depositions will not be rejected for informality in the certificate of the officer before whom they are taken, when it appears that both parties were present, and the witnesses were cross-examined.

A stipulation of the parties to a suit may dispense with any certificate by the officer taking depositions.

It is too late to raise the objection in this Court for the first time that there was no proof of the absence of the witnesses whose depositions were read.

When a case is tried before a Court without a jury, and one of the facts found by the Judge, and the very one on which the case, in his opinion, turns, is wholly unsupported by evidence, this Court will not treat this particular finding as surplusage, in order to sustain the judgment on other findings, especially if the weight of testimony is against the other findings on which respondents seek to sustain the judgment.

APPEAL from a judgment of the District Court of the Fourth Judicial District, Hon. R. S. MESICK presiding.

The facts are stated in the Opinion.

*Thomas Fitch* and *C. N. Harris,* for Appellant, cited the following authorities to show that a verdict will be set aside merely on the ground that it is against the weight of evidence: 7 Mass. 261; 13 Mass. 507; 20 Pick. 285–9; 15 Pick. 291; 1 Met. 221; 7 How. Prac. 64; 6 Hill, 433–444; 1 Caine, 25, 162; 1 Marshall, 183–335; 4 Dana, 423; 1 Bibb, 129–570; 3 Bibb, 35, 224; 4 Little,

259 ; 4 Monroe, 482 ; 7 Monroe, 223 ; 3 J. J. Marshall, 421 ; 2 Bibb, 33 ; 3 J. J. Marshall, 442.

That it was the duty of parties offering depositions to show that the witnesses whose depositions were offered, were still absent, they cited the following cases: 2 Cal. 33, 285 ; 2 Bibb, 90 ; 3 Bibb, 204 ; 4 Bibb, 521 ; 3 Little, 250 ; 4 Monroe, 366.

*Clarke & Flack*, for Respondents.

Opinion by BEATTY, J., LEWIS, C. J., concurring specially.

This was an action brought for an ox team, wagon, etc. The wagon and a part of the cattle belonged to one Stockham in the year 1864, and both parties found their claim to the property on title derived from Stockham. The plaintiff claiming that Stockham sold to J. S. Bostwick, and Bostwick to plaintiff. The defendant's theory is that Stockham sold to Symington, and Symington to defendant.

The case was tried before the Judge without a jury, who found for the defendant, and the plaintiff appeals.

The plaintiff makes but two points in this Court ; one, that certain depositions were improperly admitted in evidence, and the other that the findings of fact are not supported by the testimony.

The objections made to two of the depositions below was, that the certificate of the clerk before whom they were taken did not certify that they were *carefully* read to witnesses after being written out, and further failed to certify that the witnesses *did not wish to correct them after they were read.*

These objections, we think, are too technical, when it is shown, as in this case, that counsel on each side were present, and participated in the examination and cross-examination of the witnesses. Such an objection would certainly be entitled to grave consideration in a case where there were no cross-examination and no one present representing the opposing party.

The stipulation attached to the third deposition dispensed with all necessity of a certificate of any kind. A stipulation of the parties may certainly supply the place of a certificate of the officer.

It is further objected in this Court that the record shows no proof that the witnesses, whose depositions were read, were not, at the

time of trial, within the jurisdiction of the Court, and capable of being brought into Court to testify orally.    That objection comes too late, being taken for the first time in this Court.

Had it been raised in the Court below, possibly the absence of the witnesses might have been shown so as to admit the depositions. The failure to raise the question there amounts to a waiver of that point, or an admission that the necessary preliminary proof could have been made.

Upon the other point, we think the appellant's position must be sustained.    Plaintiff proved by Stockham that he had sold the cattle to Bostwick on the 20th of August, 1864 ; that Bostwick was a merchant to whom he was indebted, and that he was to be credited by Bostwick on his book with the price of the cattle, to wit : six hundred dollars ; that he never made any sale or contract in regard to the cattle with Symington.    Bostwick confirms this statement, so far as his purchase is concerned, and further states that, after making the contract with Stockham for the cattle he employed Symington to drive the team for him, and sent him to the pasture where the cattle were kept to get them.    Here is the direct and positive evidence of two witnesses to the fact that the sale was made to Bostwick on the 20th of *August*, a date which, we will see hereafter, becomes somewhat important.    Also the testimony of one witness, Bostwick, that within a day or so after his contract of purchase, he sent his employé, Symington, to get the cattle for him.

On the other hand, the defendant proves, by Symington, that he (Symington) bought the same team of Stockham on the 28th or 29th of July, and that he drove the team from that time (July 28th or 29th) as his own team, and never hired to Bostwick to drive his team.

Here there are two distinct theories, and a flat contradiction between the two.    The question is, whether Stockham and Bostwick perjured themselves, or whether Symington was the guilty party. It cannot be questioned that one side or the other committed perjury.

Symington showed, on his examination, that he was totally unworthy of belief.    There are some contradictions and discrepancies in his statements calculated to throw suspicion on his testimony. But the remarkable feature is, that he describes with particularity

a certain order that he wrote; declares positively when questioned that he himself wrote it; yet on the trial it was shown that he could not write, (except to sign his name) beyond that he could not write a word. On the other side, there was an attempt to impeach the credibility of Bostwick by direct testimony as to his general character. The Judge below thinks this attempt was a failure. We certainly think that the weight of the testimony was in favor of Bostwick. He seems to have been somewhat engaged in the lumber business, and the wood-choppers and lumbermen generally spoke harshly of him. Frequently, a man by a rigid enforcement of his rights, by a pertinacious stickling for small things which are, in fact, perfectly right, will as effectually incur the displeasure of laborers as by actual dishonesty. On the other hand, the merchants and business men of the town where Bostwick lived gave him an excellent character.

We think, so far, Bostwick must stand unimpeached. There was no direct attack on Stockham, and his testimony seems to be straightforward and consistent.

So far as those three principal witnesses are concerned, all the evidence entitled to any weight is on one side. The only other testimony of any consequence is the detail of conversations held with Symington, with Bostwick and with Stockham. In other words, the admissions of witnesses of the existence of a state of facts different from those sworn to on the trial.

A. J. McCreery says that he asked Symington who the cattle belonged to, and he replied that they were his when he paid for them — that Bostwick held them. John Bostwick, brother of J. S. Bostwick, swears Symington applied to him for money to pay bill due on team; stating he was driving for J. S. Bostwick; that the team belonged to J. S. Bostwick.

J. S. Watson proves that he was present when Symington was about to start to Winnemucca Valley for the team; that Bostwick gave him money, and directed his clerk, Parker, to give Symington an order for the team.

There is also much testimony to show that J. S. Bostwick paid all the bills for keeping cattle, etc.

On the other hand, there are a number of witnesses called to prove

20

statements made by J. S. Bostwick and Stockham inconsistent with their sworn evidence.

One J. Davies testifies that J. S. Bostwick once said to him he had better have done as Symington did, and then he would have work.    Davies replied, if he would buy a team and haul for Bostwick, Bostwick would soon own both him (Davies) and the team. Bostwick made no reply to this.

One Suther swears that Stockham, in August, 1864, informed him he had sold the team to Symington.    But this Suther is shown to have been willing to sell himself to either side as a witness, and clearly his evidence was not entitled to any weight.

One Spiglehoff, who keeps a tavern on the road where the team was driven, learned in August, 1864, that the team was sold — thinks he learned from Stockham it was sold to Symington, and commenced charging the bills to Symington about the 1st of August, but within the month, by direction of Bostwick, charged bills to him (Bostwick).

One Montgomery swore he heard Stockham say Symington had bought a team, or got a team from him.

Peter Robinson swears he took an order from Symington, who owed him, to J. S. Bostwick.    Bostwick refused to accept or pay the order, and said Symington owed him still for the cattle he bought for him ; that he had to buy cattle for Symington to replace those that died, and that Symington had not paid him for them yet.

This was all the important testimony tending to shake the credibility of the witnesses J. S. Bostwick and Stockham, except the deposition of Tartan Smith, which we will hereafter mention.    This kind of evidence is the weakest of all kinds of evidence, because it is more easily manufactured than any other kind, and if manufactured, more difficult to rebut.    It is also liable to the objection that even honest and correct witnesses are always liable to misunderstand and incorrectly report mere casual conversations in which they have no particular interest.    Symington, too, made admissions just as inconsistent with his testimony as those made by Bostwick and Stockham, if all the witnesses are to be believed.

Then there is the deposition of one Tartan Smith, which fixes particularly the date that Symington came to a pasture in his charge where the oxen were pastured, and claimed that he had at that

time bought the cattle from Stockham.  This, he says, was on or about the 22d of August (the time Bostwick says he sent Symington for his cattle).

The next day after Symington came and got the cattle, Stockham came and said he had sold them to Symington, and from that time forward the bills for pasturing them were to be charged to Symington.

He then went down to Bostwick's, and Bostwick told him to keep Symington's cattle, that Symington was hauling for him and he would pay the bills weekly, and when at the end of the week the bill was presented to Bostwick, he, Bostwick, paid the bill and informed witness he had nothing to do with the cattle, except that he wished to keep Symington along.

This deposition certainly makes out a complete case for Symington, if it is to be believed.  But certainly the very completeness of the deposition, the fact that it covers every point in the case so entirely, casts some suspicion on the testimony.  But there is a stronger objection to it.  The whole deposition taken together fixes the date of Symington's purchase between the twentieth and twenty-fifth of August, a date corresponding with the alleged purchase of Bostwick, and nearly a month after his alleged purchase, which by his own showing was the twenty-eighth or twenty-ninth of July.

It looks as if when this deposition was given, Symington's intention was to claim the purchase as having been made by him at the time he took the cattle from Winters' pasture, about the twentieth or twenty-second of August.  But at the trial, for some reason or other, he changes his base, and claims to have bought them in July. If Smith's testimony impeaches the statements of Bostwick and Stockham, it equally impeaches the testimony of Symington. Taking the whole testimony together, the case is involved in much doubt, with an apparent decided preponderance of testimony in favor of plaintiff, who derives title from Bostwick.  But if there had been a general verdict of a jury the other way, and the Court below had approved that verdict, this Court would not probably have felt authorized to interfere.  In this case, however, there was no jury, the case having been submitted to the Court by stipulation without a jury.  The Judge who tried it wrote a long.

and able opinion reviewing the testimony, with most parts of which we fully concur. He also filed a special finding of facts. One of those findings, and the one which is the foundation of defendant's right to a judgment, is as follows:

"*First*—In the month of August, A.D. 1864, one Stockham was possessed of an ox team as his own property, composed of eight oxen, together with the wagon, yokes, chains, etc., mentioned in the complaint, and whilst so possessed, sold and delivered the same to Jacob Symington for the price of six hundred dollars, of which price the sum of eighty-four dollars and forty cents was immediately paid, and the balance to be paid in service with the team, a portion, if not all, of which service was subsequently rendered; but no bill of sale was given, the plaintiff [meaning Stockham] reserving the legal title in himself until the price of the team should be paid."

. There is absolutely no testimony in the case supporting the latter part of this finding. Symington does not assert a conditional sale to himself in August, but an absolute sale in July. Tartan Smith's testimony, as it regards the declarations of Symington, of Stockham, and of Bostwick, refers only to an absolute sale.

The only language in all the testimony which could be tortured into a reference to a conditional sale, is that of A. J. McCreery, who testified that "Symington said they were his when he paid for them; that Bostwick held them." This language would indicate that Symington claimed some sort of contract for the purchase of the cattle from Bostwick; not that he had bought them from Stockham either conditionally or absolutely.

But this does not amount to sufficient testimony to justify any finding. It is a mere declaration of Symington in his own favor, which he afterwards contradicts under oath. It may, however, be said that the latter part of this finding is mere surplusage. That you may strike out all that part which refers to the reservation of title by Stockham, and it is then a good finding to support a judgment in favor of defendant. If the latter portion of the finding were stricken out, it is undoubtedly true that it would then be a good finding to support the judgment.

But the latter portion is a material part of the finding, and we do not think it can be thus summarily disposed of. We are not

sure that the Judge who found a conditional sale would have been willing to find an absolute sale.

The learned Judge of the Court below admits that he was impressed throughout the trial with the improbability that Stockham would have sold his team to an irresponsible man like Symington, but got rid of this idea when he became possessed of the idea of a conditional sale, and Stockham's retaining the title in himself until the team was paid for.

If then he had not arrived at the conclusion that there was a *conditional sale* (and we think he had no testimony before him to arrive at such a conclusion) he would most probably have determined that the weight of testimony as to a positive sale was in favor of plaintiff.

Again, if there was a conditional sale, there is a total absence of testimony showing the exact conditions thereof. If there were conditions precedent to be performed by Symington before the title vested in him, he should have shown these conditions performed. If he was not to have title or *absolute* right of possession until he had paid for the team, it appears to us he totally fails to make a case.

He shows, taking his testimony for truth, that he had the cattle about one hundred and ninety or one hundred and ninety-five days; that his hauling for Bostwick amounted to a fraction less than one thousand one hundred dollars. From this was to be deducted all the expenses of himself and cattle, repairs to wagon, the purchase of four oxen to replace those that died, etc. One ox is stated to have cost fifty dollars; if the others cost the same, here is an item of two hundred dollars. The cattle seem to have cost for pasturage, two dollars per night, and not less than three hundred and eighty for the whole period. Besides this, hay was bought for feeding most of the time. Toll and tavern bills on the road were to be paid; shoeing cattle, repairing wagon, and the personal expenses of Symington, all come out of this one thousand one hundred dollars. The probability is that all these expenses fell little short, if they did not exceed, one thousand one hundred dollars.

It appears to us the first finding of fact is not sustained by the testimony, and the ends of justice require a new trial should be had.

Judgment is reversed, and a new trial ordered.

LEWIS, C. J., concurring specially.

I concur in the reversal of the judgment, upon the ground that the first finding of the Court was not warranted by the evidence.